IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-cv-00814-CCE-LRW

| | | |
|---|---|---|
| LARISSA HARPER HAIRGROVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| v. | ) | **OF MOTION FOR SUMMARY** |
| | ) | **JUDGMENT BY DEFENDANTS CITY** |
| CITY OF SALISBURY, DOWNTOWN | ) | **OF SALISBURY AND LANE BAILEY IN** |
| SALISBURY INC., and LANE BAILEY, in | ) | **HIS OFFICIAL CAPACITY** |
| his individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, City of Salisbury and Lane Bailey, through undersigned counsel, respectfully move the Court for summary judgment as to all claims in this case.

## I.  NATURE OF THE MATTER BEFORE THE COURT

Plaintiff brings this action arising out of her prior employment with the Defendant City of Salisbury ("City" or "Defendant City").  Plaintiff asserts three Title VII claims: Counts One, Two, and Four. [Doc. 12]. Plaintiff titled two Counts as Count Three. The first Count Three alleges wage and hour violations under federal and state.[1] Plaintiff's second Count Three alleges violations of  state and federal constitutional violations – equal protection.[*Id.*, ¶¶ 66-70]. Plaintiff's fourth Count asserts post-termination retaliation.  *Id.,* ¶¶ 71-77.

---

[1] *See* Doc. 12, ¶¶ 60-65. Plaintiff's FLSA claim against DSI previously was dismissed because Plaintiff alleged no facts raising a plausible inference that DSI met the interstate commerce element of an FLSA claim. [Doc. 20, p. 2]. The Court also stated that the complaint was "silent as to any interstate activity by…the City." *Id.*

## II. <u>STATEMENT OF THE CASE</u>

Plaintiff filed her Complaint [Doc. 1] on October 18, 2021 and her Amended Complaint on February 11, 2022. [Doc. 12]. Defendants City and Bailey filed their Answer to the Amended Complaint on March 23, 2022. [Doc. 18]. Thereafter, the parties conducted discovery and took depositions. Defendants have timely filed their Motion for Summary Judgment and now contemporaneously file their Memorandum of Law in Support.

## III. <u>STATEMENT OF INDISPUTABLE MATERIAL FACTS</u>

1. In May 2017, Plaintiff Larissa Hairgrove applied for the Downtown Salisbury, Inc. ("DSI") Director position in response to a job posting by the City of Salisbury. Def. Ex. 1, Pl. Dep. at 184-185, 193; Am. Complaint [Doc. 12] at ¶14 and Doc. 1-1 at pp. 1-3 (job posting). The City offered Hairgrove the position, and she accepted on August 28, 2017. *Id.*; DOC. 1-1 at pp. 4-6. The offer letter described Plaintiff's position as "a <u>salary/exempt</u> position." *Id.* at p. 4 (Emphasis in original). Hairgrove's initial salary was $75,000.12 per year paid in bi-weekly installments of $2,884.62. *Id.* Plaintiff remained in her Director's position throughout her employment, she was never demoted, and her compensation and benefits were never reduced. *Id.* at 274-275.

2. On June 16, 2017, the City and DSI entered into a Memorandum of Understanding ("MOU") pursuant to which DSI would manage and operate the City's Main Street Program. *See* Def. Ex. 2, MOU. The DSI Director position was designated as a City Department Head level position reporting directly to the Assistant City Manager. *Id.*

4880-4244-6683, v. 1

3. On October 11, 2017, Plaintiff signed a "Statement of Understanding" in which she acknowledged, *inter alia*, "I have been told the FLSA status of my position and I understand the overtime policy as it relates to me." Ex. 1, Pl. Dep. at 186-188, 191-193; Def. Ex. 3, (Ex. 8, Pl. Dep). Plaintiff underlined this statement and understood she was not eligible for overtime. Ex. 1, Pl. Dep. at 192-193.

4. Plaintiff received a copy of and was given an orientation on the City's Employee Handbook on October 11, 2017. Ex. 1, Pl. Dep. at 263; Def. Ex. 4 (Pl. Dep. Ex .13 – Employee Handbook Acknowledgement form).[2] Plaintiff understood its "Wage and Hour Policies" stating that exempt employees would not receive overtime compensation if they worked over 40 hours in a workweek. Ex. 1, Pl. Dep. at 264-265; Def. Ex. 5, Handbook Excerpts (Ex. 12 to Pl. Dep.) at pp. 19-20. Pursuant to the "Recording Time" policy, Plaintiff was required to notify the City of any "pay discrepancies, unrecorded or misreported work hours, or any involuntary missed meal or break periods." Ex. 1, Pl. Dep. at 264-265; Ex. 5 at p. 21. Plaintiff never used the City's Complaint form (attached to the Handbook) to report any such issues. Ex. 1, Pl. Dep. at 265-266, 273-274.

5. In March 2019, Plaintiff received training on the Fair Labor Standards Act. Ex. 1, Pl. Dep. at 267-272; Def. Ex 6, FLSA Training. (Ex. 14 to Pl. Dep.) This training specifically addressed misclassification of employees, but Plaintiff never told her superiors she thought she was misclassified. *Id.* Plaintiff completed weekly time sheets and reviewed

---

[2] In the Statement of Understanding, Def. Ex. 3, Plaintiff acknowledged that "[She had] received a copy of the Employee Handbook and understand the policies and procedures contained therein including the Attendance Policy, Sexual Harassment Policy and the Grievance Policy." *Id.*

4880-4244-6683, v. 1

them before they were submitted to the City. Ex. 1, Pl. Dep. at 276-277; Def. Ex. 7, Time Sheets (Ex. 18 to Pl. Dep.). Throughout her employment, Plaintiff's time sheets reflected that she worked 37.5 hours per week and she never disputed them. *Id.* at 252; *See* Ex. 7.

6. As the DSI Director, Plaintiff was a City Department Head in charge of DSI's daily operations. Ex. 1, Pl. Dep., at 195-225, 227-228. She consistently described those duties in her deposition testimony, resume and discovery responses. *Id.*, Pl. Dep. at 195-225, 227-228; *See also Id.* at 237; DOC. 1-4 at p. 4 of 9. Her responsibilities, accomplishments and future goals are memorialized in DSI Board meeting minutes, work plans, and goals/objectives worksheets she prepared. Ex. 1, Pl. Dep. at 229-231; DOC. 1-5 (work plan). Plaintiff described her duties as follows: Hairgrove built a new department and merged economic development duties through a new quasi-governmental structure. Ex. 1, Pl. Dep. at 196. In her view, she was hired to be the executive director to this nonprofit partner arm." *Id.* at 48.

7. Plaintiff was educated on the Main Street Program, and trained DSI Board members and staff on the proper way to run the DSI office through its new quasi-governmental structure. *See, e.g.*, Ex. 1, Pl. Dep. at 45, 49, 69, 102-103, 112-113, 144-145, 239, 241-242, *See* Doc. 1-5 at p. 3. Plaintiff described herself as "a full time Executive Director who overs[aw] the progress and purpose of the organization." Ex. 1, Pl. Dep. at 234. Her job was "to assist with getting the whole overall [DSI work] plan done and . . . directing the development of the downtown," including building redevelopment and ensuring that her staff was present at DSI events. *Id.* at 34-35. Plaintiff responded to the

4

City's request for proposal regarding future management of the Main Street Program. *Id.,* at 233-236; Doc. 1-4. Winning this RFP was very important to enabling DSI to continue receiving Municipal Service District ("MSD") funds to allocate for their programming. Ex. 1, Pl. Dep. at 233-236. Plaintiff was responsible for enhancing the downtown municipal service district through business retention, recruitment, property development, and North Carolina Main Street ("NCMS") reporting and assessment. *Id.* at 117, 211-212.

8. Plaintiff led monthly meetings of the DSI Board and its four committees. *Id.,* at 66-67, 213-214, 221; Doc. 1-4 at p. 4. Plaintiff presented her Director's Report at each DSI Board meeting. Ex. 1, Pl. Dep. at 220, 245-246; Doc. 1-5, p. 5. Each DSI committee had its own mission that complimented the various facets of Plaintiff's managerial duties. *Id.* at 66, 213-214, 234; Doc. 1-4 at p. 4.

9. Plaintiff attended weekly City Department Head meetings that included all City Department Heads, the City Manager, Assistant City Manager and the City Attorney. Ex. 1, Pl. Dep. at 66-67, 207-208. She attended the City Council's bi-weekly meetings to provide updates on DSI's projects. *Id.* at 219-220. She also submitted work plans and goals/objectives lists to the DSI Board and Assistant City Manager Zack Kyle. *See, e.g.,* Ex. 1, Pl. Dep. at 238-247; *See also* Doc. 1-5; Def. Ex. 8,  Kyle Dep. at 104-105, 110-13.

10. Plaintiff was required to prepare and submit annual reports to the NCMS office describing DSI accomplishments and ongoing projects. Ex. 1, Pl. Dep. at 242-243; Doc. 1-5 at p. 3.  Plaintiff was the main point of contact between downtown business and property owners and DSI.

5

11. Plaintiff oversaw a $347,000 budget. Ex. 1, Pl. Dep. at 196, 244; *See, Id.* at 244. Plaintiff was responsible for "staying within budget, cutting for efficiency and conservation of funds when needed." Ex. 1, Pl. Dep. at 212.  She wrote and managed grants seeking funds to enable DSI to execute items in programming. *Id.* at 49, 224-226, 245; Doc. 1-5, p. 4. Plaintiff secured a $543,000 federal historic redevelopment grant and a $10,000 to $20,000 EPA/USDA Local Foods grant in 2020. Ex. 1, Pl. Dep. at 224-226, 245.

12. Plaintiff managed two full-time employees: Events and Marketing Coordinator LaToya Price and the Administrative Specialist Candice Brown. *Id.* at 196-197. Price and Brown began their employment in October 2018. *Id.* Plaintiff also supervised two interns, including Katelin Rice and Jordan Ferguson. *See* DOC. 1-4 at p. 4, and Ex. 1, Pl. Dep. at 204. Plaintiff was directly involved in the hiring of Price and Brown. *Id.* at 197-203. With the Administrative position, she received resumes and applications, reviewed them, narrowed the pool of applicants to interview, conducted interviews, and selected Brown for the position. *Id.* For the Events and Marketing Coordinator position, Plaintiff did all of the above, but she also created the job posting and advertised for the position.  *Id.* Price was Plaintiff's first choice for her position.  *Id.* at 203.

13. Plaintiff supervised, verbally counseled, and disciplined her staff.  *Id.* at 209-210.  She completed and conducted performance evaluations for her staff.  *Id.* at 207-208. She also delegated duties to her staff as she deemed necessary.  *See, e.g.*, *Id.* at 34-35, 48, 236.  Plaintiff also conducted a pre-dismissal hearing with a staff member. *Id.* at 150.

4880-4244-6683, v. 1

14. Throughout Plaintiff's employment, City Manager Lane Bailey, Assistant City Manager Zack Kyle and DSI Board members raised concerns about her job performance. *See, e.g.* Def. Exs. 9-13 (Bailey Dep. Exs. P3, P8-P11); *See also* Ex. 8, Kyle Dep. at 18-19, 31-34, 61, 73-75. Plaintiff's recurring problems were tardiness, failing to complete tasks, lack of organization and failing to respond to emails and phone calls in a timely manner. *Id.*

15. On February 25, 2020, the DSI Board conducted a closed session at the end of their regular monthly meeting to candidly discuss Plaintiff's job performance outside of her presence. Def. Ex. 14, DSI at pp. 1-2. (Pl. Dep. Ex. 5).  Plaintiff left a recording device in the closed session and then listened to it. *Id.* On March 17, 2020, the DSI Board sent Bailey a letter describing Plaintiff's misconduct.  *See* Def. Ex. 14. On April 12, 2020, Hairgrove submitted a written response. *See* Doc. 1-9.

16. In conjunction with his evaluation of Plaintiff, City Manager Lane Bailey solicited the DSI Board's feedback regarding her job performance. Ex. 8, Kyle depo., pp. 49-52. Based upon the consistently negative feedback he received, Bailey prepared and delivered a pre-dismissal letter to Hairgrove on June 22, 2020. *Id.*, pp. 54-58; Doc. 1-10; Ex. 1, Pl. Dep. at 147-148.   Bailey asked her to return to his office on June 24, 2020, but Plaintiff resigned on June 23, 2020.  *Id.* at 19, 149. Plaintiff testified twice at her deposition that she had been constructively discharged. *Id.* at 172, 260. By correspondence dated June 24, 2020, the City accepted Plaintiff's resignation and asked her to follow up so that the City could investigate her allegations of workplace harassment. Def. Ex. 17. Not having

heard from Plaintiff, Defendant Bailey wrote to her again on August 28, 2020. *See* Def. Ex. 18. Plaintiff never responded to the City's efforts to investigate her allegations. Ex. 1, Pl. Dep. at 25-28.

17. On November 19, 2020, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) alleging she had been discriminated against by the City and DSI on the basis of sex and retaliation. (EEOC Charge Number 433-2021-00689). Plaintiff asserted she had been treated with hostility and differently than similarly situated male employees, and that she had been retaliated against for complaining about discrimination. In April 2021, the Charge was unsuccessfully mediated with the City.

18. On October 22, 2020, Plaintiff was hired as the Lexington Tourism Authority's (LTA) Tourism Marketing Coordinator. Ex. 1, Pl. Dep. at 127, 130-131. Her supervisor was LTA Executive Director Robin Cagle (f/k/a Bivens).[3] *Id.* This was a newly created, interim position intended to increase tourism revenues which fund the LTA. Doc. 12, ¶¶ 72-75. Cagle considered Plaintiff's job performance "okay." Def. Ex. 15, Cagle Dep. at 14. Plaintiff had "unacceptable" tardiness and attendance issues. *Id.* at 16.

19. On or before April 2021, Plaintiff told Robin Cagle that she was "suing" the City of Salisbury. Ex. 1, Pl. Dep. at 127-130; Ex. 15, Cagle Dep. at 17-18. Plaintiff then corrected herself and told Cagle that she had only filed EEOC charges. *Id.* After Plaintiff volunteered this information to Cagle, Cagle received a phone call from Rebecca McGee,

---

[3] *See* Def. Ex. 16, LTA's letter eliminating Plaintiff's position, signed by Robin Bivens, LTA Executive Director.

4880-4244-6683, v. 1

former Main Street Director for the City of Lexington.[4] *Id.* at 18-19. McGee told Cagle that she had "heard [Plaintiff is] suing the city of Salisbury." *Id.* at 19-20; *See* Ex. 1, Pl. Dep. at 161 (Plaintiff does not know how McGee became aware of her EEOC charge). Cagle considered this mere gossip and told McGee that "that's neither here nor there." Ex. 15, Cagle depo at 20. LTA considered this information to be irrelevant. *Id.* at 22-24.

20. In July 2021, LTA began seeking applicants to replace Cagle, who had announced her retirement. *Id.* at 26-27. Plaintiff applied for the position, but was not interviewed. *Id.* at 26-28; Ex. 1, Pl. Dep. at 132. Between July and September, Cagle told Plaintiff that LTA considered her marketing position to be a one-year position that was not likely to continue after the new Executive Director was hired. Ex. 15, Cagle Dep. at 32-33. On August 26, 2023, Morgan Brookshire was hired as the new Executive Director. *Id.* at 29, 36-38; Def. Ex. 16. On that same day, Hairgrove was notified that her position was eliminated because LTA could not afford to fund both positions. *Id.;* Ex. 1, Pl. Dep. at 132-133.

## IV. <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when the pleadings, responses to discovery, depositions, and declarations, if any, establish that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. *Schulze v. Meritor Automotive*, 163 F.Supp.2d 599, 608

---

[4] Plaintiff did not know who made the call until Cagle's deposition. Ex. 1, Pl. Dep.at 160-161.

4880-4244-6683, v. 1

(W.D.N.C. 2000). Once the moving party has met that burden, the nonmoving party has the burden of persuasion and must come forward with specific facts showing that there is a genuine issue for trial. *Schulze*, 163 F.Supp.2d at 608.

## V. LEGAL ARGUMENT

**A.**    **Plaintiff Cannot Establish a *Prima Facie* Case of Hostile Work Environment or  Sex Discrimination and Count One Fails as a Matter of Law**

**1. Hostile Work Environment**

Plaintiff cannot establish a *prima facie* case of hostile work environment based on sex. "To demonstrate sexual harassment and/or a racially hostile work environment, a claimant must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.' " *See Okoli v. City Of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Mosby–Grant v. City of Hagerstown,* 630 F.3d 326, 334 (4th Cir. 2010).

Whether the conduct in question is sufficiently pervasive to create a hostile work environment must be judged from both a subjective and objective perspective. *Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 498 (M.D.N.C., 2002) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Factors to consider include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., supra*. Moreover, in a Title VII discrimination case, the plaintiff bears "the ultimate burden of persuading the court that she has been the victim of intentional

10

discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed. 207 (1981).

Here, Plaintiff does not and cannot present evidence of any of the four elements of her *prima facie* case. To the contrary, Plaintiff could not articulate at her deposition even one instance that would constitute unwelcome, severe and pervasive harassment based on sex that could be imputed to the City. Def. Ex. 1, Pl. Dep. at 41–55 There is absolutely no evidence that she was treated with hostility based on her sex. Plaintiff basically felt like she was being bullied and treated differently because some members of the DSI Board did not care for the way she was performing her job, which Plaintiff *never linked* to her gender. *Id; see also,* Doc. 1-9. For example, Plaintiff felt DSI Board member Whitney Williams (female) was bullying her because Williams did not understand Plaintiff's job. *Id.* at 42, 50-51. Plaintiff also believed that DSI Vice-Chair Diane Young (female) did not understand Plaintiff's job and pushed arbitrary deadlines upon her. *See* Doc. 1-9, p. 2.

In her Amended Complaint, Plaintiff stated, "[i]n this letter [Doc. 1-9], Plaintiff detailed the hostile work environment that she had been subjected to and the treatment she had received which was quite different from how other male department heads working for the City had been treated." Doc. 12, ¶ 44. However, an examination of Doc. 1-9, Plaintiff's letter dated April 12, 2020 to Assistant City Manager Zack Kyle, reveals that Plaintiff did not once complain of a hostile work environment based on sex. Rather, all she complained of was how members of the DSI Board, primarily Williams and Young (females) targeted and criticized her "for every piece of minutiae regarding tasks to complete,"

4880-4244-6683, v. 1

"condescending remarks," "finger-pointing at [Plaintiff] for any real or unreal action of 'nonperformance' of the board and committees' tasks…." Doc. 1-9, p. 3. Moreover, nowhere in this laundry list of issues Plaintiff had with the DSI Board does she mention being treated differently or less favorably than her male counterparts. *Id.,* pp. 1-10. This letter is Plaintiff's centerpiece upon which she bases her evidence of hostile work environment based on sex. Yet, all this letter establishes is that Plaintiff does not appreciate the way some members of the Board viewed her job performance or communications with her. *Id.* While Plaintiff may have found some DSI Board members rude and abrasive, even if accurate, there is no evidence that any actions of the Board were based on sex or are attributable to the City. Furthermore, such claims of rudensss are not cognizable as Title VII does not operate as a "general civility code" in the workplace. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S. Ct. 998, 1002, 130 L. Ed. 2d 201 (1998).

Significantly, separate and apart from the fact that there was no sexual harassment of Plaintiff, she cannot meet her burden of proving that some basis exists for imputing liability to the City when she did not take advantage of or follow City policy in reporting alleged harassment. *See* Def. Ex. 19. Plaintiff never used the City's Complaint Form to bring any alleged hostile work environment to the attention of the City. *See* Statement of Facts (SOF), ¶ 4. Importantly, no tangible employment action was taken against Plaintiff. She resigned on her own after she was once again counseled about her performance issues. *See* SOF, ¶ 16 Further, the *Ellerth/Faragher* affirmative defense comprises two necessary elements: (a) that the City exercised reasonable care to prevent and correct promptly any

sexually harassing behavior, and (b) that Ms. Hairgrove unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S. Ct. 2275, 2279, 141 L. Ed. 2d 662 (1998). Here, the City provided training to Plaintiff on its workplace anti-harassment policy and reporting procedures for harassment. Plaintiff acknowledged receiving this training on two different occasions – October 11, 2017 and May 7, 2018. *See* Def. Ex. 19, City's Workplace Harassment Policy and Plaintiff's Acknowledgements of receiving training on this policy.[5] Nevertheless, Plaintiff never filed one of the City's Complaint forms about any workplace issue. SOF, ¶ 4. Based upon this record, Plaintiff's allegation of hostile work environment based on sex fails.

## 2. Plaintiff was Not Discriminated Against on the Basis of Sex

Plaintiff can attempt to demonstrate "through direct or circumstantial evidence that her sex was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). Plaintiff has offered no direct evidence of discrimination based on her sex to prevail under the first framework. If

---

[5] The City's Employee Manual is a public record pursuant to the North Carolina Public Records Act (N.C.G.S. §§ 132-1 *et seq.*). Further, Plaintiff has placed her personnel records at issue insofar as anti-harassment training is involved. Thus, she has waived confidentiality of her personnel records regarding evidence of receiving such training. *See Robinson v. Bowser*, No. 1:12-CV-301, 2013 WL 3791770, at *7 (M.D.N.C. July 19, 2013) and the authorities cited therein insofar as they concluded that a Plaintiff who places his personnel records at issue by challenging the Defendant's employment decisions in court arguably has waived any statutory confidentiality in his personnel records where, as here, Plaintiff has made the substance of the protected personnel file central to the merits of her claims. Defendants request that the Court take judicial notice of the City's Employee Manual provision and Plaintiff's acknowledgments of receiving workplace harassment training contained in Def. Ex. 19 pursuant to Fed. R. Evid. 201(b)(stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute because it" "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508–09 (4th Cir. 2015).

relying upon indirect evidence of discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) her employer took an adverse employment action against her; (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate job expectations; and (4) she was replaced by a person outside of her protected class who was similarly qualified or less qualified and/or that she was disciplined more severely for conduct similar to that for which a non-protected employee received more lenient treatment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005).

If Plaintiff is able to show a *prima facie* case of discrimination as set forth above, then "the burden shifts to the employer to articulate a nondiscriminatory reason for its action." *Laing v. Federal Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). If the employer meets this burden of production, Plaintiff must then "prove that the employer's explanation was in fact pretext." *Id.* (internal quotations omitted).

Defendants concede that Plaintiff is a member of a protected class. However, she cannot establish elements two, three, or four of her *prima facie* case. It is indisputable that Plaintiff was not subjected to an adverse action because she resigned; SOF ¶¶ 1, 16. At this point the inquiry ends, but in the interest of a full evaluation of Plaintiff's claims, Defendants have shown that Plaintiff was not performing her duties at a level that met either the Board's or the City's legitimate expectations. *See* SOF ¶¶ 14-16.[6] Further,

---

[6] Even if Plaintiff's Disciplinary Action Reports (DAR) (Def. Exs. 9 & 12) are assumed, *arguendo*, to constitute

4880-4244-6683, v. 1

Plaintiff was not terminated, and she was not subjected to an adverse employment action. She voluntarily resigned once she learned of the Pre-dismissal letter. *Id.,* ¶¶ 1, 16. Finally, Plaintiff has offered no evidence to suggest that the Downtown Development Director position was filled by a member outside her protected class, and she has failed to show that any City employee outside her protected class was treated more favorably under similar circumstances. *See* Ex. 1, Pl. Dep. at 33-34, 81-84. Indeed, Plaintiff did not know if any of the comparators she cited – males and females – had ever engaged in any misconduct. *Id.* at pp. 83-84. Plaintiff cannot establish a *prima facie* case of discrimination based on sex.

Further, the evidence shows that even if Plaintiff could establish a *prima facie* case of sex discrimination, which she cannot, all employment actions related to her employment, including consideration of her dismissal, were based on legitimate non-discriminatory reasons, specifically ongoing performance issues, and not a pretext for unlawful sex discrimination. *Id.,* ¶¶ 14-16.

**B. <u>Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation For Complaining About Sex Discrimination and a Hostile Work Environment and Count Two Fails As A Matter of Law</u>**

---

adverse employment actions, they are not at issue with regard to Plaintiff's claim of sex discrimination. The most recent DAR occurred on June 18, 2019 (Def. Ex. 12) approximately 1.5 years prior to Plaintiff's filing of her first EEOC Charge on November 19, 2020. *See* Def. Ex. 20, Plaintiff's EEOC Charge No. 433-2021-00689. In order to timely complain of either of these DARs, Plaintiff would be required to file a charge of discrimination within 180 days. *See e.g., White v. BFI Waste Servs., LLC,* 375 F.3d 288, 292 (4th Cir. 2004). This Charge of Discrimination is a public record of which the Court can take judicial notice pursuant to Fed. R. Evid. 201, and Defendants respectfully request that the Court take judicial notice of this Charge. *See Robinson v. Bowser, supra,* 2013 WL 3791770, at *7 (M.D.N.C. July 19, 2013) holding that no grounds exist to seal an EEOC Charge of Discrimination because such documents are public records and noting that the Court may take judicial notice of an EEOC Charge of Discrimination as a public record. *Id.* at *5, *citing Briggs v. T & D Plumbing & Heating Co., Inc.,* No. WDQ–10–2714, 2011 WL 3798227, at *4 n. 18 (D.Md. Aug. 24, 2011) (unpublished) ("[T]his Court could take judicial notice of the discrimination charge as a matter of public record.") and *Fabisch v. University of Minn.,* 304 F.3d 797, 802 (8th Cir. 2002) ("[W]e conclude that an EEOC charge is part of the public record....").

15

In her Second Count, Plaintiff alleges that she was retaliated against in violation of Title VII for complaining about sex discrimination. Title VII prohibits retaliation against an employee when, in relevant part, the employee "has opposed any practice made an unlawful employment practice" under Title VII." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.,* 655 F.3d 342, 350 (4th Cir. 2011). Employees engage in protected conduct when, *inter alia*, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003). Significantly, however, the employee must oppose an "unlawful employment practice" under Title VII, 42 U.S.C. § 2000e–3(a), or at a minimum, an employment practice the employee reasonably believes to be unlawful. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Significantly, the Supreme Court has held that the protected activity by the employee must be the but-for, direct cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

As discussed above, Plaintiff filed two EEOC Charges against the City. *See* Def. Ex. 20 and Doc. 12-2. Although Defendants contend it was not reasonable for Plaintiff to believe that that the employment practices of which she complained were unlawful,

4880-4244-6683, v. 1

Defendants will concede for purposes of discussion only that Plaintiff engaged in protected opposition activity. However, Plaintiff has failed to show an adverse action because she resigned her employment with the City. SOF ¶¶ 1, 16. Thus, Plaintiff has failed to show a *prima facie* case of retaliation. Further, even if it is assumed, *arguendo* only*, that Plaintiff was subjected to an adverse action of discharge, she cannot meet her burden of showing that any alleged adverse action was the "but-for" cause of such alleged discharge. Rather, Plaintiff left her City employment because of her inadequate job performance. SOF, ¶¶ 14-16. Because Plaintiff has failed to establish a *prima facie* case of retaliation. Consequently, the burden of proof does not shift to the employer-City, and the analysis ends at this point. *See McDonnell Douglas*, *supra* 411 U.S. at 802 (1973).

**C.** **Defendant City's Legitimate Non-Retaliatory, Non-Discriminatory Reasons**

The burden of production to articulate non-discriminatory, non-retaliatory reasons has not shifted to Defendant City inasmuch as Plaintiff has failed to establish a *prima facie* case of sex discrimination, hostile work environment or retaliation. *McDonnell Douglas*, *supra* Nevertheless, each of the City's actions regarding Plaintiff's employment was based upon non-discriminatory, non-retaliatory reasons. *See* SOF ¶¶ 14-16.

**D.** **Count Three – FLSA and NCWHA Claims Fail**

Plaintiff's failure to state a claim under the FLSA has been ruled upon by this Court. [Doc. 20, p. 2]. This Court dismissed Plaintiff's FLSA claim against DSI based upon the failure to plead interstate commerce activity and also stated that the Complaint was "silent"

as to any allegation of interstate commerce activity of the City. Therefore, Plaintiff's FLSA claim also fails against the City as insufficiently plead and also pursuant to the "law-of-the-case" doctrine. This doctrine recognizes that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) (internal quotation marks omitted).

Plaintiff claims that she was misclassified as a salaried exempt employee and is therefore entitled to overtime compensation for hours worked in excess of 40 hours in a workweek. This claim is without merit because Plaintiff satisfies the executive exemption under the N.C. Wage and Hour Act. Plaintiff was "employed in a bona fide executive capacity" under N.C.G.S. §95-25.14(b)(4) (and 29 U.S.C. § 213(a)(1)); *See Powell v. P2Enterprises, LLC*, 786 S.E.2d 798, 800 (N.C. Ct. App. 2016)([i]n interpreting the [Wage and Hour Act], North Carolina courts look to the FLSA for guidance.'"). The executive exemption covers employees:

(1) Compensated on a salary basis . . . at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

4880-4244-6683, v. 1

An employee is paid on a "salary basis" if she "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) It is undisputed that Plaintiff was paid on a salary basis exceeding $684 per week, as her salary ranged from $75,000.12 to $80,000 and her starting bi-weekly paychecks were $2,884.62, or $1,442.31 per week. *See* SOF, ¶ 1.

Plaintiff's primary duty was management, which includes activities such as interviewing, selecting, and training of employees; directing the work of employees; disciplining employees; apportioning the work among employees; planning and controlling the budget. 29 C.F.R. § 541.102; *Pang v. Adult Day Health, Inc.*, 2022 U.S. Dist. LEXIS 130440, *17-19 (D. Md. July 21, 2022). Plaintiff was a City Department Head who engaged in each of these duties and functioned as the executive director/manager of the DSI. *See* SOF, ¶¶ 2-3, 6-11. While Plaintiff claims she was "micromanaged," this alone is insufficient to undermine her testimony that she was in charge of running DSI. *See* Doc. 12, ¶19; *See also Thomas v. Dogencorp, Inc.*, 2012 U.S. Dist. LEXIS 46667, at *17 (D. S.C. April 3, 2012)(the exemption does not demand complete freedom from supervision).

Plaintiff must have customarily and regularly directed the work of two or more employees. *See* 29 C.F.R. § 541.701. The indisputable evidence shows Plaintiff did so. *See* SOF, ¶¶ 12-13. *See Pang*, 2022 U.S. Dist. LEXIS 130440, *20-21 (these facts were sufficient to establish this element of the exemption). Taken together, these activities

constitute direction of at least two other employees. *See Grace v. Family Dollar Stores, Inc.* 637 F.3d 508, 513-14 (4th Cir. 2011).

Finally, either Plaintiff must have had the authority to hire *or* fire other employees. 29 C.F.R. § 541.105; *Pang*, 2022 U.S. Dist. LEXIS 130440, at *20-23. It is undisputed that Plaintiff was involved in every aspect of hiring both Price and Brown, from posting the job (for Price's position), evaluating applications and selecting applicants to interview, interviewing and hiring. SOF, ¶¶ 12-13. Based upon the indisputable evidence, Plaintiff's Count Three fails.

### E.    Second Count Three – North Carolina and Federal Constitutional Violations

Plaintiff's claim brought directly under the N.C. Constitution is barred because Plaintiff failed to plead the absence of an adequate state law remedy. *See Frank v. Savage*, 205 N.C. App. 183, 191 (2010). Further, it is well settled that a direct cause of action under the State Constitution is permitted only "in the absence of an adequate state remedy." *Corum v. University Of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); *Hadley v. City of Mebane*, No. 1:18CV366, 2020 WL 1539724, at *18 (M.D.N.C. Mar. 31, 2020). Here, Plaintiff has testified twice that she was "constructively discharged," (SOF, ¶ 16) which is recognized as a common law cause of action in North Carolina. *See, e.g., Cox v. Indian Head Indus.., Inc.,* 123 F. Supp. 2d 892, 900 (W.D.N.C. 2000). Plaintiff's North Carolina State Constitution claim must be dismissed.

Plaintiff failed to set forth the necessary elements of a 42 U.S.C. § 1983 claim

against the City. *See* Doc. 12. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Further, Plaintiff's 14th Amendment Equal Protection Claim is analyzed under the same standards applicable to hostile work environment claims under Title VII. *Riley v. Buckner*, 1 F. App'x 130, 133 (4th Cir. 2001). As demonstrated above in Sections V.A. and V.B, Plaintiff has failed to establish a claim of hostile work environment sexual harassment or retaliation. Consequently, Plaintiff's claim under the Fourteenth Amendment fails. *Fox v. Leland Volunteer Fire/Rescue Dep't, Inc.,* 648 F. App'x 290, 293–94 (4th Cir. 2016).[7]

### F.        Title VII – Post-Termination Retaliation for Complaining About Sex Discrimination and Hostile Work Environment Due to Sex

Plaintiff claims her LTA interim position was eliminated and her Executive Director application was "rejected" because someone shared confidential information about Plaintiff's pending EEOC charge, including the allegation that Plaintiff was going to sue her former employer, the City of Salisbury." Doc. 12, ¶¶74-75. A former employee may bring a retaliation claim under Title VII for a former employer's post-employment conduct.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)).

For the reasons state above in Section V.B., Plaintiff cannot establish a *prima facie* case of retaliation. That is, Plaintiff can show neither an adverse action by the City nor a

---

[7] To the extent that Plaintiff brings this Count against Defendant Bailey in his official capacity, it is subject to dismissal as duplicative of the claim made against the City, Bailey's former employer. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

4880-4244-6683, v. 1

but-for causal connection. Further, the indisputable facts establish that Defendants City and Bailey had no involvement in LTA learning of Plaintiff's EEOC charges. Rather, Plaintiff herself disclosed this information to LTA. Further, after Plaintiff had disclosed this information to LTA Executive Director Robin Cagle, Rebecca McGee informed Cagle that she had heard Plaintiff was suing the City. SOF, ¶¶ 18-19. Finally, the City played no role LTA's decision not to promote Plaintiff or its decision to eliminate her position. *Id.,* ¶ 20.

## CONCLUSION

Defendants respectfully move the Court to grant summary judgment in its favor.

## CERTIFICATION OF WORD COUNT

The undersigned counsel hereby certifies that this Memorandum of Law does not exceed 6,250 words in accordance with MDNC Local Rule 7.3(d)(1).

This the 3rd day of April, 2023.

CRANFILL SUMNER LLP

By: /s/ *Patrick H. Flanagan*
Patrick H. Flanagan, NC Bar #17407
Stephanie H. Webster, NC Bar #12164
Attorneys for Defendants
Post Office Box 30787
Charlotte, NC 28230
Telephone (704)332-8300
Facsimile (704) 332-9994
phf@cshlaw.com
swebster@cshlaw.com

4880-4244-6683, v. 1

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS CITY OF SALISBURY AND LANE BAILEY IN HIS OFFICIAL CAPACITY** with the Clerk of Court using the CM/ECF system and served the same on all of the parties to this cause addressed as follows:

| | |
|---|---|
| Valerie L. Bateman<br>June K. Allison<br>valerie@newsouthlawfirm.com<br>june@newsouthlawfirm.com<br>*Attorneys for Plaintiff* | G. Bryan Adams, III<br>Bryan.adams@vraplaw.com<br>*Attorney for Defendant Downtown Salisbury, Inc.* |

This the 3rd day of April, 2023.

**CRANFILL SUMNER LLP**

By: /s/ *Patrick H. Flanagan*
        Patrick H. Flanagan, NC Bar #17407
        Stephanie H. Webster, NC Bar #12164
        Attorneys for Defendants
        Post Office Box 30787
        Charlotte, NC 28230
        Telephone (704)332-8300
        Facsimile (704) 332-9994
        phf@cshlaw.com
        swebster@cshlaw.com

4880-4244-6683, v. 1