



# DOWNTOWN

## SALISBURY
### NORTH CAROLINA

*A Main Street Original*

March 17, 2020

SENT VIA ELECTRONIC MAIL

Lane Bailey, City Manager
lbail@salisburync.gov

Zack Kyle, Assistant City Manager
zkyle@salisburync.gov

Graham Corriher, City Attorney
Graham.Corriher@salisburync.gov

## CONFIDENTIAL COMMUNICATION

Dear Lane, Zack, and Graham,

Please allow this correspondence to memorialize and preserve DSI Organization Committee's concern over inappropriate actions taken by our Board's Executive Director, Larissa Harper. Due to the gravity of her actions, which include a deliberate breach of the Board's trust in addition to potential criminal acts and violations of City of Salisbury Employee Policy, we believe it important to get our concerns and all of the facts concerning this matter in writing, for your review and ongoing consideration. We thank you for working with us thus far on this sensitive and upsetting matter.

By way of background, as you are aware, it has been almost three years since the merger and/partnership between Downtown Salisbury, Inc.'s 501(c)(3) nonprofit board and the City of Salisbury, whereby all employees of the nonprofit board are City of Salisbury employees.

At DSI's January 28, 2020 board meeting, DSI's Chair Whitney Wallace Williams called a Closed Session discussion, which was openly intended to <u>exclude</u> all City personnel and our City Council liaison for the purpose of promoting a candid discussion on how the nonprofit Board felt the partnership was going since it was established 2.5 years ago. After the completion of our regular board meeting in January, all City staff, management, and DSI staff persons left the room.

Similarly, at DSI's February 25, 2020 Board Meeting, the Agenda set by the Executive Director again included a second closed session discussion, as requested by Chair Williams, to

1



## DOWNTOWN

## SALISBURY
### NORTH CAROLINA

*A Main Street Original*

discuss a recent meeting that DSI's Organization Committee had with City management and DSI staff, which was facilitated by North Carolina Main Street Director, Liz Parham – where the City and Nonprofit representatives openly discussed pros and cons of the merger. The closed session meeting was also intended to, and did, discuss modified terms that DSI had provided to the City regarding modifications to the MOU.

It was crystal clear to all Board members, all DSI staff, and all City employees and management that the closed session meetings explicitly <u>excluded</u> City-affiliated representatives, including DSI staff, City employees, management, and our City liaison. On both the January and February Board Agendas, prepared by Harper, it stated: **"Closed Session without City Staff/Liaison".**

After our February closed session discussion, as people started getting up to leave, Chairwoman Williams noticed a device left on the table, which was noted to be the City's recording device that had been brought into the meeting, and left in the meeting, by Harper.

The error and pending issue was immediately acknowledged by DSI nonprofit Board members standing by, including DSI Chair Williams and Vice-Chair Diane Young.

After the meeting, Williams and Young met for several minutes to develop a plan about what to do with the recording. It was decided to type up the Minutes from the open session, and then delete the recording from the device. Young offered to type the Minutes, delete the recording, and then deliver the device back to Harper.

Shortly thereafter, the following email exchange took place between Young and Harper, with Williams copied:

> From: Diane Young [mailto:dianeyoung96@gmail.com]
> Sent: Tuesday, February 25, 2020 10:34 AM
> To: Larissa Harper <larissa.harper@salisburync.gov>; Whitney Wallace <wwallace@wallacegraham.com>
> Subject: Recording device
>
> Larissa,
>
> Good news for you. I have the recording device and will do the minutes of today's meeting. Bad news is I won't get to this until Friday, so your recorder will be returned early next week.
>
> Thanks.

2



# D O W N T O W N

# S A L I S B U R Y

## N O R T H   C A R O L I N A

### *A Main Street Original*

Diane

**(Exhibit 1)**

Harper responded that she needed the device back sooner and that plan was not acceptable. She stated:

> **From:** Larissa Harper <larissa.harper@salisburync.gov>
> **Sent:** Tuesday, February 25, 2020 11:46 AM
> **To:** Diane Young <dianeyoung96@gmail.com>; Whitney W. Williams <wwallace@wallacegraham.com>
> **Subject:** RE: Recording device
>
> I certainly appreciate your offer, Diane. However, Dileika and I already planned for the Secretary to type up the Minutes this month, so I will need it back in order to save and send the file to her. If you do not have time to drop it off at City Hall today, I can help with that--I need to pick up checks from the accountant and collect a second signature anyway. I can stop by wherever you may be in town, get your signature and the device.
>
> If the recording was still running after City staff left, and you are worried about that conversation being overheard, I'll be glad to play the recording until we get to that point and erase it in front of you.
>
> Thanks! --Larissa

(Exhibit 2)

That afternoon, Young responded to Harper:

> **From:** Diane Young [mailto:dianeyoung96@gmail.com]
> **Sent:** Tuesday, February 25, 2020 1:01 PM
> **To:** Larissa Harper <larissa.harper@salisburync.gov>; Whitney Wallace <wwallace@wallacegraham.com>
> **Subject:** Re: Recording device
>
> That works. I can bring the recorder by early tomorrow afternoon if you are going to be there. Will find the time stamp where we need to remove the rest of the recording.
>
> Thank you.

3



# DOWNTOWN

## SALISBURY
### NORTH CAROLINA

*A Main Street Original*

**From:** Larissa Harper <larissa.harper@salisburync.gov>
**Sent:** Tuesday, February 25, 2020 1:33 PM
**To:** Diane Young <dianeyoung96@gmail.com>; Whitney W. Williams
<wwallace@wallacegraham.com>
**Subject:** RE: Recording device

Good deal. Want to meet at 1 p.m.? If it helps, I think the recording had been going about 7 mins. and 30 sec. before we began the meeting and staff left at 9:15 a.m. —LH

**(Exhibit 3)**

That afternoon, Young and Williams talked and decided to involve DSI Secretary Dileika Wilson to see what her thoughts were on returning the device with the recording still on the device. Wilson agreed with Young and Williams that it was <u>not</u> a good idea to return the recording device with the closed session recording still on it.

A new plan was formed by Wilson and Young. They decided to *record* the open session on a *new* device (Young's phone) and then transfer those files electronically to Harper so that she could have a recording by which to do the Minutes, or for Wilson to do the Minutes, but would <u>not</u> have access to the closed session private meeting conversation. The plan was to record the open session portion of the recording, and to delete the device completely before returning it.

Young spent the afternoon re-recording our open session on her cell phone.

On Wednesday morning at 7:59 am, Young sent Harper, with Williams copied, three separate emails with three files of the re-recorded open session meeting. 1/3 is below:

**From:** Diane Young <dianeyoung96@gmail.com>
**Sent:** Wednesday, February 26, 2020 7:59 AM
**To:** Larissa Harper <larissa.harper@salisburync.gov>
**Cc:** Whitney W. Williams <wwallace@wallacegraham.com>
**Subject:** Fwd: Diane Young shared "My recording 1.wav" with you

Larissa,

Good morning. I am sending you the recording from yesterday's Board meeting via dropbox. It is in three files. The recording you are receiving is as good as the quality that was on the recorder

4



**D O W N T O W N**

**S A L I S B U R Y**

**N O R T H   C A R O L I N A**

*A Main Street Original*

itself, there are times where you have to work hard to understand what someone is saying but it is no different than if you were listening to the actual recording device.

I will drop off the recorder at some point today.

Thank you.

Diane

**(Exhibit 4)**

After Young sent the drop-box recording, she had trouble deleting the recording device of all the recorded files. She spent time pulling up the online operations manual on the device, and could not figure out how to delete the recordings. She called Williams to ask if someone from her office could help with the deletion.

In the late afternoon on Wednesday, Young came to Williams' office, at 525 N. Main Street, and the two met with the firm's office's IT specialist to help delete the files from the recording. Young and Williams, deleted all files on the device, to the point where the device read 0/0 files on this device. According to the policy manual on p. 24, if the device states 0/0, the recordings have been deleted.

On Tuesday, Assistant City Manager Zack Kyle reached out to Williams and asked to meet. The meeting was set for Wednesday afternoon. During the meeting, Kyle disclosed to Williams almost immediately that Harper had deliberately listened to the full contents of our closed session meeting.

Williams was visibly upset, and expressed as such to Kyle, that Harper had listened to the recording of the DSI Board's clearly-designated closed meeting. Williams explained to Kyle the efforts the nonprofit board had gone through to delete the recording; the emails in her possession that confirmed Harper's knowledge that the closed session meeting was not intended for her to hear; and the grave act of dishonesty and mistrust that had been committed by her deliberately listening to it anyway. Williams advised Kyle that she would have no choice but to tell the Board what happened, as it was the Board's trust which had been breached.

Kyle later confirmed with Harper that she had listened to the full closed session recording.

Our Committee has since learned, after we pulled the device operation manual from the internet a second time, that there is a fine print section, on a separate page from the How to Erase a Recording entry that states in small print: *Even when formatting or erasing is performed, only*

5



# DOWNTOWN

## SALISBURY

### NORTH CAROLINA

*A Main Street Original*

*the file management information of the internal memory is updated and the recorded data is not completely erased. Before giving the voice recorder to somebody or disposing of it, perform initialization and then record silence until there is no recording time remaining in order to prevent the leakage of personal information.*

It is clear that Harper, with full knowledge that the recording was not meant for her to hear and that the meeting deliberately excluded she and City-affiliates, deliberately endeavored to pull deleted recordings from the City recording device. At some point, she informed management that she had deliberately listened, or planned to listen, to the full recording.

********

As we have discussed in person and/or in phone conversations since, our Committee has learned that Harper's actions are not only a grave violation of trust but may also be criminal.

**N.C. Gen. Stat. 15A-287** is a North Carolina criminal statute, which makes it illegal, and in fact a *Class H* felony, for any person, whether a municipal employee or not, to record and/or endeavor to intercept a recording where they are not a party, or have the consent of a party to the discussion. The statute states:

**§ 15A-287. Interception and disclosure of wire, oral, or electronic communications prohibited.**
(a)      Except as otherwise specifically provided in this Article, a person is guilty of a Class H felony if, without the consent of at least one party to the communication, the person:
(1)      Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

**(Exhibit 5)**

Our Committee has also reviewed the City of Salisbury Policy Manual and has learned that the "unauthorized recording of conversations in the workplace or video recording of other City employees," is a first offense, terminable offense.

6



**D O W N T O W N**

**SALISBURY**

**N O R T H   C A R O L I N A**

*A Main Street Original*

The City of Salisbury Policy states:

| OFFENSE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| Unauthorized recording of conversations in the workplace or video recording of other City employees | Termination | | |

(Exhibit 6)

**\*\*\*\*\*\*\*\*\*\***

In summary, DSI Organization Committee has serious concerns about the act that Harper has committed. Harper's actions were dishonest and deliberate and show a lack of integrity and good character. As an agent of the DSI board, her actions reflect on the DSI Board members, as well as the City of Salisbury and its employees. Her actions further appear to be criminal and in direct conflict and violation of City of Salisbury Employee Policies.

We are sensitive to the needs of the City due to the unthinkable coronavirus pandemic, and we respect the City's needs on a "reasonable" timeline. However, we do not want any responsive action to be delayed for months from now, or for our organization's "new normal" to be working with an Executive Director that we distrust. We struggle to accept that violations of North Carolina law, of the public trust, of the nonprofit's trust, and of City of Salisbury's policies are survivable because of this macro event.

While we recognize that the DSI Board has no voice in City personnel disciplinary matters, it is the opinion of the majority of Organization Committee that Harper should have been suspended, or at the very least removed from DSI matters and communication with the DSI Board, pending an internal investigation promptly upon the City's learning of her terminable and potentially criminal violation. As she was not, our Board - which continues to work actively to help downtown business owners in the retail, restaurant, and service sector who are facing the most critical test to their business's viability ever – has been placed in a difficult situation of continuing to work with an Executive Director who we hold in contempt. As it stands now, Organization Committee does not see a workable scenario where the existing Board remains intact with the current Executive Director.

7



## DOWNTOWN

### SALISBURY

#### NORTH CAROLINA

*A Main Street Original*

Thank you for your time and attention to this matter. We hope that we can work together to rebuild our partnership and relationship in light of this serious and unfortunate issue.

Sincerely,

### DSI Organization Committee

Whitney Wallace Williams (Chair), Diane Young (Vice-Chair and EVC Chair), Greg Shields (Past Chair), Tim Proper (Treasurer), Dileika Wilson-Ballard (Secretary), Cheryl Goins (Design Chair)

Cc:    Brian Miller, City Councilman/ DSI Liaison (bmil@salisburync.gov)
        Mayor Karen Alexander (kalex@salisburync.gov)

8

**Whitney W. Williams**

| | |
|---|---|
| **From:** | Diane Young <dianeyoung96@gmail.com> |
| **Sent:** | Tuesday, February 25, 2020 10:34 AM |
| **To:** | Larissa Harper; Whitney W. Williams |
| **Subject:** | Recording device |

Larissa,

Good news for you. I have the recording device and will do the minutes of today's meeting. Bad news is I won't get to this until Friday, so your recorder will be returned early next week.

Thanks.

Diane

*Diane M. Young, President*
*dianeyoung96@gmail.com*
*704-213-0747*

[x]

www.dgninc.com

Exhibit
1

**Whitney W. Williams**

From: Larissa Harper <larissa.harper@salisburync.gov>
Sent: Tuesday, February 25, 2020 11:46 AM
To: Diane Young; Whitney W. Williams
Subject: RE: Recording device

I certainly appreciate your offer, Diane. However, Dileika and I already planned for the Secretary to type up the Minutes this month, so I will need it back in order to save and send the file to her. If you do not have time to drop it off at City Hall today, I can help with that--I need to pick up checks from the accountant and collect a second signature anyway. I can stop by wherever you may be in town, get your signature and the device.

If the recording was still running after City staff left, and you are worried about that conversation being overheard, I'll be glad to play the recording until we get to that point and erase it in front of you.

Thanks! --Larissa

From: Diane Young [mailto:dianeyoung96@gmail.com]
Sent: Tuesday, February 25, 2020 10:34 AM
To: Larissa Harper <larissa.harper@salisburync.gov>; Whitney Wallace <wwallace@wallacegraham.com>
Subject: Recording device

CAUTION: *** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. ***

Larissa,

Good news for you. I have the recording device and will do the minutes of today's meeting. Bad news is I won't get to this until Friday, so your recorder will be returned early next week.

Thanks.

Diane

*Diane M. Young, President*
*dianeyoung96@gmail.com*
*704-213-0747*



1

Exhibit
2

www.dgninc.com

2

**Whitney W. Williams**

| | |
|---|---|
| **From:** | Larissa Harper <larissa.harper@salisburync.gov> |
| **Sent:** | Tuesday, February 25, 2020 1:33 PM |
| **To:** | Diane Young; Whitney W. Williams |
| **Subject:** | RE: Recording device |

Good deal. Want to meet at 1 p.m.? If it helps, I think the recording had been going about 7 mins. and 30 sec. before we began the meeting and staff left at 9:15 a.m. --LH

**From:** Diane Young [mailto:dianeyoung96@gmail.com]
**Sent:** Tuesday, February 25, 2020 1:01 PM
**To:** Larissa Harper <larissa.harper@salisburync.gov>; Whitney Wallace <wwallace@wallacegraham.com>
**Subject:** Re: Recording device

CAUTION: *** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. ***

That works. I can bring the recorder by early tomorrow afternoon if you are going to be there. Will find the time stamp where we need to remove the rest of the recording.

Thank you.


*Diane M. Young, President*
*dianeyoung96@gmail.com*
*704-213-0747*



www.dgninc.com


On Tue, Feb 25, 2020 at 11:47 AM Larissa Harper <larissa.harper@salisburync.gov> wrote:

I certainly appreciate your offer, Diane. However, Dileika and I already planned for the Secretary to type up the Minutes this month, so I will need it back in order to save and send the file to her. If you do not have time to drop it off at City Hall today, I can help with that--I need to pick up checks from the accountant and collect a second signature anyway. I can stop by wherever you may be in town, get your signature and the device.

Exhibit

3

1

If the recording was still running after City staff left, and you are worried about that conversation being overheard, I'll be glad to play the recording until we get to that point and erase it in front of you.


Thanks!  --Larissa




From: Diane Young [mailto:dianeyoung96@gmail.com]
Sent: Tuesday, February 25, 2020 10:34 AM
To: Larissa Harper <larissa.harper@salisburync.gov>; Whitney Wallace <wwallace@wallacegraham.com>
Subject: Recording device


CAUTION: *** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. ***


Larissa,


Good news for you. I have the recording device and will do the minutes of today's meeting. Bad news is I won't get to this until Friday, so your recorder will be returned early next week.


Thanks.


Diane


*Diane M. Young, President*

*dianeyoung96@gmail.com*

*704-213-0747*

2

www.dgninc.com

3

Case 1:21-cv-00814-CCE-JLW   Document 42-11   Filed 04/04/23   Page 14 of 24

**Whitney W. Williams**

| | |
|---|---|
| From: | Diane Young <dianeyoung96@gmail.com> |
| Sent: | Wednesday, February 26, 2020 7:59 AM |
| To: | Larissa Harper |
| Cc: | Whitney W. Williams |
| Subject: | Fwd: Diane Young shared "My recording 1.wav" with you |

Larissa,

Good morning. I am sending you the recording from yesterday's Board meeting via dropbox. It is in three files. The recording you are receiving is as good as the quality that was on the recorder itself, there are times where you have to work hard to understand what someone is saying but it is no different than if you were listening to the actual recording device.

I will drop off the recorder at some point today.

Thank you.

Diane


*Diane M. Young, President*
*dianeyoung96@gmail.com*
*704-213-0747*



www.dgninc.com


---------- Forwarded message ---------
From: **Diane Young (via Dropbox)** <no-reply@dropbox.com>
Date: Wed, Feb 26, 2020 at 7:50 AM
Subject: Diane Young shared "My recording 1.wav" with you
To: <dianeyoung96@gmail.com>

Hi Diane,

Diane Young (diane@concorddowntown.com) invited you to view the file **"My recording 1.wav"** on Dropbox.



1



Enjoy!

The Dropbox team

Report to Dropbox

2

**§ 15A-287. Interception and disclosure of wire, oral, or electronic communications prohibited.**

 (a) Except as otherwise specifically provided in this Article, a person is guilty of a Class H felony if, without the consent of at least one party to the communication, the person:

   (1) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

   (2) Willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

    a. The device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communications; or

    b. The device transmits communications by radio, or interferes with the transmission of such communications.

   (3) Willfully discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through violation of this Article; or

   (4) Willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Article.

 (b) It is not unlawful under this Article for any person to:

   (1) Intercept or access an electronic communication made through an electronic communication system that is configured so that the electronic communication is readily accessible to the general public;

   (2) Intercept any radio communication which is transmitted:

    a. For use by the general public, or that relates to ships, aircraft, vehicles, or persons in distress;

    b. By any governmental, law enforcement, civil defense, private land mobile, or public safety communication system, including police and fire, readily available to the general public;

    c. By a station operating on any authorized band within the bands allocated to the amateur, citizens band, or general mobile radio services; or

    d. By any marine or aeronautical communication system; or

   (3) Intercept any communication in a manner otherwise allowed by Chapter 119 of the United States Code.

 (c) It is not unlawful under this Article for an operator of a switchboard, or an officer, employee, or agent of a provider of electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of employment while engaged in any activity that is a necessary incident to the rendition of his or her service or to the protection of the rights or property of the provider of that service, provided that a provider of wire or electronic communication service may not utilize service observing or random monitoring except for mechanical or service quality control checks.

 (d) It is not unlawful under this Article for an officer, employee, or agent of the Federal Communications Commission, in the normal course of his employment and in discharge of the monitoring responsibilities exercised by the Commission in the enforcement of Chapter 5 of Title 47 of the United States Code, to intercept a wire or electronic communication, or oral communication transmitted by radio, or to disclose or use the information thereby obtained.

 (e) Any person who, as a result of the person's official position or employment, has obtained knowledge of the contents of any wire, oral, or electronic communication lawfully intercepted pursuant to an electronic surveillance order or of the pendency or existence of or implementation of



an electronic surveillance order who shall knowingly and willfully disclose such information for the purpose of hindering or thwarting any investigation or prosecution relating to the subject matter of the electronic surveillance order, except as is necessary for the proper and lawful performance of the duties of his position or employment or as shall be required or allowed by law, shall be guilty of a Class G felony.

(f)     Any person who shall, knowingly or with gross negligence, divulge the existence of or contents of any electronic surveillance order in a way likely to hinder or thwart any investigation or prosecution relating to the subject matter of the electronic surveillance order or anyone who shall, knowingly or with gross negligence, release the contents of any wire, oral, or electronic communication intercepted under an electronic surveillance order, except as is necessary for the proper and lawful performance of the duties of his position or employment or as is required or allowed by law, shall be guilty of a Class 1 misdemeanor.

(g)     Any public officer who shall violate subsection (a) or (d) of this section or who shall knowingly violate subsection (c) of this section shall be removed from any public office he may hold and shall thereafter be ineligible to hold any public office, whether elective or appointed. (1995, c. 407, s. 1.)

Case 1:21-cv-00814-CCE-JLW   Document 42-11   Filed 04/04/23   Page 18 of 24

# POLICY MANUAL



# CITY OF SALISBURY

February 2018



Exhibit

6

City of Salisbury may transfer your employment from one position to another with or without notice, as required by production or service needs, or upon request by an employee and management approval. Transfers in excess of 90 days may be considered final and your paycheck may be increased or decreased consistent with the pay scale for your new position.

For a period of six (6) months following an employee's transfer, an employee will be restricted from applying for an open transfer or promotion absent extenuating circumstances, in which case Department Head and Human Resource approval is required.

## 5.6 WORKFORCE REDUCTIONS (LAYOFFS)

The City recognizes that layoffs or restructuring may be necessary due to shortage of funds or work, program shifts, reorganization or consolidation, or other changes as determined by management. In the event a workforce reduction is necessary, Department Heads will develop and submit a departmental plan to the City Manager, evaluating each position and designating positions to be eliminated. The City will then follow these guidelines to determine which employees will be retained:

- Essentiality of Position
- Education, skills, and abilities necessary to perform the remaining job(s)
- The Employee's Performance
- Length of Continuous Service

Employees occupying positions to be eliminated will be subject to reassignment, transfer, demotion, or layoff/outplacement.

## 5.7 STANDARDS OF CONDUCT

City of Salisbury wishes to create a work environment that promotes job satisfaction, respect, responsibility, integrity, and value for all of our employees and the community at large. Every employee has a shared responsibility toward improving the quality of our work environment. By deciding to work for the City of Salisbury, you agree to follow the City of Salisbury's rules.

While it is impossible to list every item that could be considered misconduct in the workplace, what is outlined below is a list of common-sense infractions that could result in discipline, up to and including immediate termination of employment. This policy is not intended to limit the City of Salisbury's right to discipline or discharge employees for any reason permitted by law, or to initiate discipline at any step for the examples of infractions listed. In fact, while we value our employees, the City of Salisbury retains the right to terminate an employee on an "at-will" basis.

Page 27

This list is not intended to be and should not be construed as a comprehensive list. The City reserves the right to issue discipline up to and including termination for instances of misconduct not specified on this list. In addition, and as stated above, the City reserves the right to initiate discipline at any stage, including termination, depending on the circumstances of the offense and prior disciplinary/performance history.

| OFFENSE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| Attendance: | | | |
| • Unauthorized absence | See Section 4.8, Attendance | See Section 4.8, Attendance | See Section 4.8, Attendance |
| • Repeated unexcused tardiness or<br>• Failure to observe work hours | See Section 4.8, Attendance | See Section 4.8, Attendance | See Section 4.8, Attendance |
| Criminal Charges | | | |
| • Arrest or indictment on felony charges | Written warning to suspension | | |
| • Conviction, plea of guilty, or plea of nolo contendere to a charge of theft, drug laws, sexual misconduct or crime of moral turpitude | Written warning to termination | Termination | |
| Disclosure of confidential City information/trade secrets | Written warning to Termination | Termination | |
| Excessive use of work time for personal matters such as telephone calls, emails, internet usage and visitors | Record of Discussion to Written Warning | Written Warning to Suspension | Suspension to Termination |
| Failure to possess a valid driver's license when required by job duties | Suspension to Termination | Termination | |
| Failure to wear proper uniform or safety equipment; failure to follow dress code policy | Record of Discussion to Written Warning | Written Warning to Suspension | Suspension to Termination |
| Falsification of records, including time records, or willful false statement to supervisors. This includes providing inaccurate, incomplete or misleading information verbally or in writing related to employment or City business | Suspension to Termination | Termination | |

Case 1:21-cv-00814-CCE-JLW   Document 42-11   Filed 04/04/23   Page 21 of 24

| OFFENSE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| Fighting with a fellow employee, vendor, or a member of the community | Suspension to Termination | Termination | |
| Fraudulent use of sick leave | Written Warning to Termination | Suspension to Termination | Termination |
| Gambling on City premises | Written Warning | Suspension to Termination | Termination |
| Horseplay | Written Warning to Termination | Suspension to Termination | Suspension to Termination |
| Insubordination or disrespectful behavior to a supervisor | Written Warning to Termination | Suspension to Termination | |
| Interference with work of other employees | Record of Discussion to Written Warning | Written Warning to Suspension | Suspension to Termination |
| Leaving assigned work area without authorization | Written Warning to Termination | Suspension to Termination | Termination |
| Lending City keys or keycards to unauthorized persons | Record of Discussion to Termination | Written Warning to Termination | Suspension to Termination |
| Loitering or loafing | Record of Discussion | Written Warning to Suspension | Termination |
| Manufacture, possession, purchase, sale, or use of non-prescribed drugs or illegal substances, including marijuana off the job | Suspension to Termination | Termination | |
| Physical or verbal abuse or harassment of a fellow employee or a citizen of the community | Suspension to Termination | Termination | |
| Possession of, using, distributing, selling or being under the influence of alcohol, non-prescribed medication or illegal drugs while on City property, in City vehicles, in City uniform or on City business | Termination | | |
| Sexual or other unlawful harassment or sexual misconduct at a City workplace, while on City business or in a City uniform | Written Warning to Termination | Termination | |

| OFFENSE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| Sleeping while on duty | Written Warning to Termination | Termination | |
| Smoking in an unauthorized area | Record of Discussion | Written Warning | Termination |
| Stealing | Termination | | |
| Threatening, coercing or intimidating another employee at any time for any purpose | Written Warning to Termination | Termination | |
| Unauthorized possession of a firearm, illegal weapon, knife having a blade longer than 2 ½ inches, or other potentially dangerous or hazardous property while on duty, at a City function or on City property | Termination | | |
| Unauthorized possession, use or removal of City property | Written Warning to Termination | Termination | |
| Unauthorized posting or distribution of any materials or solicitation on City property | Record of Discussion to Written Warning | Written Warning to Termination | |
| Unauthorized recording of conversations in the workplace or video recording of other City employees | Termination | | |
| Use of vulgar, profane, obscene or abusive language | Record of Discussion to Suspension | Suspension to Termination | Termination |
| Violation of City parking regulation | Record of Discussion | Written Warning | Suspension to Termination |
| Violation of City policies or procedures | Record of Discussion to Termination | Written Warning to Termination | Suspension to Termination |
| Violation of safety rules, negligence or engaging in unsafe activities | Written Warning to Suspension | Suspension to Termination | Termination |
| Willful damage to, destruction or misuse of City property | Suspension to Termination | Termination | |
| Working unauthorized overtime | Record of Discussion | Written Warning | Suspension to Termination |

Page 30

Nothing in this policy is intended to limit employee rights under the National Labor Relations Act. Failure to comply with this policy can result in disciplinary action, up to and including immediate termination of employment.

## 5.8 CRIMINAL ACTIVITY; ARRESTS

Involvement in criminal activity, whether on or off the City's property, may result in disciplinary action including suspension or termination of employment. Disciplinary action depends upon a review of all factors involved, including whether or not the employee's action was work-related, the nature of the act, or circumstances which adversely affect attendance or performance. Any disciplinary action is not dependent upon the disposition of any case in court.

Employees are expected to be on the job, ready to work, when scheduled. Inability to report to work as scheduled, must be notified to the HR Director and immediate supervisor within five (5) days. As a result of an arrest, related to drug or alcohol offense, may lead to disciplinary action, up to and including termination of employment, for violation of the attendance policy or job abandonment.

The City will take disciplinary action based on information reasonably available. This information may come from witnesses, police, or any other source as long as management has reason to view the source as credible.

## 5.9 DRUG AND ALCOHOL POLICY

The City of Salisbury considers drug and alcohol abuse a serious matter which will not be tolerated. The City absolutely prohibits employees from using, selling, possessing, or being under the influence of illegal drugs, alcohol, or a controlled substance or prescription drug not medically authorized while at their job, on City property, or while on work time.

Therefore, it is the City's policy that an employee shall:

1. Not report to work or be subject to duty while his/her ability to perform job duties is impaired due to alcohol or drug use which occurred on or off duty.

2. Not possess or use drugs or alcohol, or have the odor of alcohol or drugs on his/her breath or person, during working hours, on breaks, during meal periods while on City property, while on the job or while operating any City equipment or vehicles.

3. Not directly or through a third party sell, distribute, or provide drugs or alcohol to any person or to any other employee while either employee or both employees are on duty, "on call", in uniform, on City property, or operating City equipment.

Case 1:21-cv-00814-CCE-JLW   Document 42-11   Filed 04/04/23   Page 24 of 24