ADDITIONAL EXCERPTS FROM
ZACK KYLE DEPOSITION

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
              Civil Action No.: 1:21-cv-00814-CCE-LRW


LARISSA HARPER HAIRGROVE,         )
                                  )
                  Plaintiff,      )
                                  )
     vs.                          )
                                  )
CITY OF SALISBURY, DOWNTOWN       )
SALISBURY INC., and LANE          )
BAILEY, in his individual and     )
official capacity,                )
                                  )
                  Defendants.     )
                                  )
---------------------------------


                    _____

                           DEPOSITION
                              OF
                           ZACK KYLE
                    _____



TAKEN AT THE SALISBURY, NC CITY HALL:
217 SOUTH MAIN STREET
SALISBURY, NC 28144



                         01-30-2023
                       1:53 O'CLOCK P.M.
                    _____

                         Gretchen Wells
                         Court Reporter

                       Chaplin & Associates
                  132 Joe Knox Ave, Suite 100-G
                       Mooresville, NC 28117
        (704) 606-1434 | (336) 992-1954 | (919) 649-4444
```

1   A.   I would have no idea.
2   Q.   Okay.  Are there any -- like, would you
3   create a document that would -- that would indicate
4   when you spoke with her about performance?
5   A.   Create a document?
6   Q.   Yeah?  Like, would you document that you had
7   discussed with her, you know, her performance and how
8   you could assist her in making sure she's meeting the
9   requirements of her job?
10  A.   I took notes periodically, but I'm not sure
11  I would have every time we met.
12  Q.   Okay.  Do you think you kept those notes?
13  A.   I doubt it.
14  Q.   Okay.  Okay.  So it says, "As we have
15  discussed, I have concerns with your being able to be
16  responsive to emails, calls and work related matters
17  that need your timely attention.  We have also
18  discussed the need for you to utilize the staff you
19  currently have to assure that the work of your
20  department is being done."
21       So in September 12th, 2018, what staff did
22  she have?
23  A.   Again, I probably -- she may have had a
24  receptionist of which I think, at that time, I -- come
25  to think of her name, Candice somebody.  Candice

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW        COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 3 of 8

1     A.   Yes.
2     Q.   Okay.  So I want to go back now to P3.  And
3  this is the disciplinary action that you issued in
4  December.
5     A.   Okay.
6     Q.   So you -- you refer back to the, "You were
7  advised to respond to phone calls and emails within
8  the same day or 24 hours."
9     A.   Right.  Correct.
10    Q.   And you can't recall whether everybody had
11 to do that, but you know you told Larissa she had to
12 do it.  Is that right?
13    A.   Again, I don't know what was required of
14 everybody else.  I mean ---
15    Q.   Well, what about the people that reported to
16 you?
17    A.   Again, whenever I had issues, we'd have
18 those discussions.
19    Q.   Okay.  So an email was sent -- you say this,
20 "An email was sent to you on October 31st by one of
21 the DSI board members, and you did not respond until
22 November 12th."  So do you know what that email was
23 about?
24    A.   I couldn't tell you right now.
25    Q.   Okay.  Did you provide Larissa with a copy

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW              COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 4 of 8

```
 1  of it at the time?
 2       A.   I am not sure.  We had the discussion, and I
 3  probably went over the details of the -- who it was or
 4  what the concern was, sure.
 5       Q.   Okay.  And then you say, "There are a number
 6  of emails in your inbox that have not been opened or
 7  responded to."
 8       A.   Correct.
 9       Q.   And how did you know that?
10       A.   I had someone from human resources looking
11  at emails.
12       Q.   Look at her emails.  And did you ever have
13  the occasion to do that to any other department head?
14       A.   I'm sure we've done it in the past, yes.
15       Q.   Do you recall who you did that with?
16       A.   I think that's a personnel matter.
17       Q.   Pardon me?
18       A.   I think that would probably be a personnel
19  matter.
20       Q.   Well, do you recall who it was, though?  Can
21  you, like, name that person by initials?
22       A.   I don't believe I need to do that.
23            MR. FLANAGAN:  Zack, I think you can
24  respond.  As long as you're not talking about the
25  specifics of any kind of investigation or personal
```

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW        COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 5 of 8

Zack Kyle                                                    Page 27

```
 1  of it at the time?
 2       A.   I am not sure.  We had the discussion, and I
 3  probably went over the details of the -- who it was or
 4  what the concern was, sure.
 5       Q.   Okay.  And then you say, "There are a number
 6  of emails in your inbox that have not been opened or
 7  responded to."
 8       A.   Correct.
 9       Q.   And how did you know that?
10       A.   I had someone from human resources looking
11  at emails.
12       Q.   Look at her emails.  And did you ever have
13  the occasion to do that to any other department head?
14       A.   I'm sure we've done it in the past, yes.
15       Q.   Do you recall who you did that with?
16       A.   I think that's a personnel matter.
17       Q.   Pardon me?
18       A.   I think that would probably be a personnel
19  matter.
20       Q.   Well, do you recall who it was, though?  Can
21  you, like, name that person by initials?
22       A.   I don't believe I need to do that.
23            MR. FLANAGAN:  Zack, I think you can
24  respond.  As long as you're not talking about the
25  specifics of any kind of investigation or personal
```

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW        COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 5 of 8

```
 1  ought to be in her personnel file, right?
 2       A.   It would have been in my working papers.  I
 3  don't know that it necessarily had to be in her
 4  personnel file.
 5       Q.   Okay.  So did you ever give her any of those
 6  dates?
 7       A.   I'm sure we had those discussions.
 8       Q.   Okay.  And it says, "Finally, your lack of
 9  responsiveness to the North Carolina Main Street
10  personnel prompted a call from them to the city
11  manager and myself, which has led to my asking the
12  marketing person in your department to lead our North
13  Carolina Main Street Conference Coordination."
14            So I have several questions about that.
15       A.   Sure.
16       Q.   Who was the Main Street personnel who
17  called?
18       A.   Again, I -- I'm not sure if it was Liz
19  Parham, or I was trying to think of the other lady
20  that was working with us, and I cannot think of her
21  name.  Because I -- I've looked over some of this
22  stuff.  And I was trying to think of -- but there was
23  another person that was involved.
24       Q.   And who do you -- which one do you think
25  called you?  Do you know?
```

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW           COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 6 of 8

1   Q.   Okay.  But who -- you were the one who told
2   her to make the changes?
3   A.   Yes.
4   Q.   Okay.  And did you tell her, "Make these
5   changes," or did you say it, "I think you ought to
6   make these changes"?  Because it says, "requested,"
7   and I'm trying to figure out if that was like, "I want
8   you to make these changes whether you want to make
9   them or not."  Or it's, "I think you should make these
10  changes to look better."
11  **A.   That probably would have been the DSI board**
12  **member that would have requested the changes -- asked**
13  **for the changes.**
14  Q.   Okay.  All right.  The next paragraph talks
15  about, "Pattern of lateness discovered after reviewing
16  Keyscan."  Now, I'm going to ask you the same
17  questions I asked you before ---
18  A.   Sure.
19  Q.   --- about auditing people's emails.  Did you
20  -- did you routinely review the Keyscans of your
21  department heads?
22  A.   No.
23  Q.   So why did you review her Keyscan entries?
24  A.   **Pattern of lateness.**
25  Q.   Well, did she tell you she had meetings

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW          COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 7 of 8

1  before work that ran over past 8:30?
2      A.  I'm sure when we met and talked about this
3  in the past, she would have told me.
4      Q.  Okay.  Well, why would you then write her up
5  if she said, "Look, I'm not here because I'm in these
6  meetings"?
7      A.  Probably more than one time.  I wouldn't
8  have -- it would have been probably more than once
9  that this occurred.  It had to be a pattern in order
10 for us to write it up.
11     Q.  Okay.  But you don't know why she was late?
12     A.  I wouldn't know why she was late for all --
13 every instance, because she wouldn't tell me she was
14 late.  So how would I know?
15     Q.  Well, is it considered late if you're at
16 work somewhere else?
17     A.  No.
18     Q.  So you just assumed she was not at work?
19     A.  If I've got someone, and ten out of 15 days
20 they're late, then are they having meetings every
21 time?
22     Q.  Well, I don't know.  Did you ask her?
23     A.  I'm sure we had those conversations.
24     Q.  Okay.  So you told her city business hours
25 are 8:30 to 5:00?

01-30-23 Hairgrove v Salisbury/1:21-cv-00814-CCE-LRW         COPY

Chaplin & Associates, Inc.
www.chaplinandassociates.com
transcripts@chaplinandassociates.com

Case 1:21-cv-00814-CCE-JLW   Document 58-2   Filed 06/28/23   Page 8 of 8